## SEABOARD REFRACTORIES CO. v. LEHIGH VALLEY R. CO.
### No. 4483.

Circuit Court of Appeals, Third Circuit.
Aug. 19, 1931.

Fred B. Scott, of New York City, for appellant.

John E. Selser, of Hackensack, N. J., and George S. Hobart, of Newark, N. J., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court entered for the defendant upon the verdict of a jury.

The plaintiff below, Seaboard Refractories Company, alleged in its complaint that the defendant "set out a fire" upon its buildings at Valentines in Middlesex county, N. J., at or about 8 o'clock in the forenoon of August 16, 1923, because of the negligent and careless construction, equipment, and operation of one of its steam locomotive engines on its railroad track which runs by the plaintiff's property. This is a suit to recover damages caused by the fire.

The alleged negligent construction and equipment of the engine referred to the spark arrester which did not prevent the escape of sparks and live coals. That the engine threw sparks when it passed the plaintiff's property at the time in question was denied by the defendant. Whether or not it threw sparks at this time was therefore the vital question.

The defendant relied almost entirely upon the testimony of its engineer, John S. Fahey, to rebut the charge that the engine threw sparks while passing the plaintiff's property. He testified that when he passed the property his engine was "drifting," going 15 to 20 miles an hour, that his throttle lever was "shut off tight" and the engine was not using steam and not throwing sparks. He further testified on this trial that the engine would throw sparks when doing heavy work and the throttle was open, but was sure that it was not open at the time he passed plaintiff's factory.

If this was a fact and the jury believed it, the conclusion was inevitable that the fire was not caused by the escape of sparks through the screen or spark arrester of the engines in question.

It appears that this same witness testified in a former trial of this case. He was asked in this trial the following question as to his testimony in the former trial: "Now, will you listen to this question? Do you remember on the trial of this case before testifying, 'And when you use steam your engine throws sparks?' And do you remember answering, 'Oh, yes, when you use steam, yes, sure.' Do you remember being asked that particular question and answering it in that particular way?"

The court refused to admit that question, and this refusal is one of the two assignments of error on which the appellant relies.

If that question and answer on the former trial referred to the time when the engine was passing the property of the plaintiff, they would be contrary to his testimony on this trial, would tend to impeach him, and was admissible. If, however, they referred to the time when the engine was doing heavy work with the throttle open elsewhere and at other times, he had already answered the question on both trials.

Counsel for appellee objected to the question "unless it be limited to credibility," that is, to the impeachment of the credibility of the witness. The court asked if there was testimony by others that the engine was using steam when passing the plaintiff's property,

and counsel for plaintiff said, "No." The question, therefore, could not have impeached the testimony of the witness with respect to his using steam when he was passing the property, and whether or not the court would permit the witness to repeat what he had already said on both the first and second trial (that the engine was not using steam and was not throwing sparks when he passed the plaintiff's property, but that it would throw sparks when doing heavy work with the throttle open) was a matter of discretion with the learned district judge and is not ground for reversal.

■ The appellant says that the learned trial judge further erred in permitting the jury to determine that the spark arrester which "they saw was in the passenger engine at all" and "was one in common use and approved by experience."

The statute of New Jersey provides with reference to spark arresters as follows: "Every company or person operating or using any railroad shall take and use all practicable means to prevent the communication of fire from any engine used by them in passing along or being upon such railroad to the property, of whatever description, of any owner or occupant of any land adjacent or near to said railroad, and shall provide such engine with a screen or cover in the smokestack so as to arrest and prevent, as much as practicable, the escape of fire." Vol. 3, Compiled Statutes of New Jersey 1910, page 4245, § 56.

The learned trial judge charged on this subject that: "Now, furthermore particularly defining this 'all practicable means', if the defendant used upon its engine a spark arrester of any approved pattern in general use, and which, upon a careful inspection by a skilled mechanic, appeared to be in good condition, the defendant is not responsible for the damage done by a fire occasioned by sparks escaping from said spark arrester".

This is in accord with the law of New Jersey. An arrester of a kind in common use and approved by experience complies with the statutory requirement, although as a matter of fact it may not be the best type. Vallaster v. Atlantic City Railroad Company, 72 N. J. Law, 334, 62 A. 993.

■ The plaintiff contends that the learned trial judge erred in permitting the jury to determine that the spark arrester used on the locomotive engines in question was one of "approved pattern in general use," because there was no evidence of common or general use to support such a finding.

Stanley West, general foreman of the Perth Amboy Locomotive Shops, Edwin A. Adams, boiler maker foreman, and W. I. Cantley, mechanical engineer of the defendant company, all testified that the screen used by the locomotives in question is known as the "basket" type and was made by the Baldwin Locomotive Works. Among his duties as mechanical engineer of the Lehigh Valley Railroad, Mr. Cantley has been engaged, among other things, in designing locomotives and other equipment for railroads. He testified that in August, 1923, when the fire in question occurred, there were two kinds of spark arresters in use, the "basket" type and the "master mechanics' front end arrangement" or type.

While these witnesses, or at least some of them, have not made tours of inspection to other railroads to ascertain the kind of arresters they used, there are other ways than that of tours of inspection by which the kind of arresters used by other railroads may be ascertained. That the "basket" type of spark arrester is in common or general use stands uncontradicted as a fact. The learned trial judge submitted to the jury the question of whether or not the spark arresters used in the two locomotives, Nos. 2331 and 3427, which drew the passenger and freight trains by the plaintiff's factory, were in general use. Its verdict shows that it found that they were, and, while the testimony on this point may not be so full and satisfactory as might be desired, yet we think it was sufficient to sustain a finding to that effect.

■ The court likewise submitted to the jury the question of the identity of the spark arresters used in the two locomotives, which passed the plaintiff's property near the time when the fire was discovered, and its verdict on evidence, which we think was sufficient, settles this fact.

We do not find that error was committed, and the judgment is affirmed.